<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| FELICIA A. B., | |
| Plaintiff, | Case No. 2:25-cv-09271 (BRM) |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Felicia A. B.'s ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 402–34. (ECF Nos. 1, 6.) The Commissioner filed an Opposition. (ECF No. 8.) Plaintiff filed a Reply. (ECF No. 11.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed and considered the submissions filed in connection with this appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

**I.      BACKGROUND**

**A.  Procedural History**

This matter arises out of the Commissioner's final decision denying Plaintiff's application for DIB, dated June 27, 2024. (ECF No. 1 ¶¶ 1, 7.) Plaintiff filed a Title II application for a period of disability and DIB on November 26, 2019. (Transcript of Proceedings ("Tr.") (ECF No. 4) at 317–23.) Plaintiff alleged disability commencing May 6, 2019. (*Id.* at 317.) Specifically, Plaintiff

1

alleged her ability to work was limited by two spinal surgeries, "C5/C6 fusion anterior/posterior," limited range of motion, and pain in her shoulders, neck, and arms. (*Id.* at 378 (citation modified).)

Plaintiff's claims were initially denied on February 26, 2020, and then denied upon reconsideration on June 10, 2020. (*Id.* at 141.) On July 22, 2020, Plaintiff requested a hearing before an administrate law judge ("ALJ"). (*Id.*) On June 1, 2021, Plaintiff, as well as an impartial vocational expert, testified at a telephonic hearing before ALJ Ricardy Damille. (*Id.* at 83–117, 141). On November 2, 2021, ALJ Damille issued a partially favorable decision finding Plaintiff "has been disabled under sections 216(i) and 223(d) of the . . . Act beginning on June 1, 2021." (*Id.* at 152.) The Appeals Council vacated ALJ Damille's November 2, 2021 decision and remanded the case on January 11, 2023. (*Id.* at 160–64.)

ALJ Damille held another telephonic hearing on March 19, 2024, during which Plaintiff and an impartial vocational expert testified. (*Id.* at 34, 53–82.) On June 27, 2024, ALJ Damille issued a partially favorable decision[1] finding Plaintiff "has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on October 31, 2021." (*Id.* at 44.) The ALJ's June 27, 2024 decision became final when the Appeals Council denied Plaintiff's request to review ALJ Damille's decision on April 14, 2025. (*Id.* at 1–7.) Having exhausted her administrative remedies, Plaintiff filed her appeal with this Court, seeking review of ALJ Damille's decision.

**B. Administrative History**

Plaintiff was 52 years old on the alleged onset date of May 6, 2019, and 55 years old on the established onset date of October 31, 2021. (*Id.* at 38, 317.) She has at least a high school education. (*Id.* at 43.) ALJ Damille determined Plaintiff met the Act's insured status requirements

---

[1] Although ALJ Damille found Plaintiff became disabled as of October 31, 2021, Plaintiff had alleged an onset date of disability of May 6, 2019. (Tr. at 37, 44.)

through December 31, 2024. (*Id.* at 36.) ALJ Damille considered the entire record in reaching his decision and employed the five-step process established by the SSA to evaluate whether the Plaintiff was eligible for social security and disability benefits. (*Id.* at 34–44.)

At step one, ALJ Damille determined Plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 6, 2019. (*Id.* at 36.) At step two, ALJ Damille found Plaintiff had the following "medically determinable and severe impairments" since the alleged onset date: "cervical herniation" and "cervical radiculopathy." (*Id.* at 37.) Moreover, the ALJ found such impairments "significantly limit . . . [Plaintiff's] ability to perform basic work activities." (*Id.*) At step three, ALJ Damille concluded since May 6, 2019, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.*) The ALJ further found Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except: occasionally pushing and/or pulling with the upper extremities. She can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, and crouch; but never crawl. She can frequently handle and finger with the hands. She can occasionally reach overhead with the upper extremities.

(*Id.* at 38.) At step four, ALJ Damille concluded Plaintiff "has no past relevant work." (*Id.* at 42–43.) Finally, at step five, ALJ Damille found prior to the established onset date of October 31, 2021, Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.* at 44.)

## II.    STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In other words, a district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

III.   **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the claimant's specific impairment is not listed, the ALJ will consider the most similar listed impairment to decide whether the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a

decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). However, factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. As noted above, substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV.   DECISION

Plaintiff argues substantial evidence does not support: (1) ALJ Damille's reasons for finding Dr. Richard Winne, M.D.'s opinion was not persuasive (ECF No. 6 at 21–32); (2) ALJ Damille's determination Plaintiff has the RFC "to perform the exertional demands of light work" (*id.* at 32–39); (3) the ALJ's reasoning for not crediting Plaintiff's subjective complaints (*id.* at 39–41); and (4) the ALJ's decision not to credit evidence from Plaintiff's husband (*id.* at 41–45). The Court addresses each category in turn.

### A. Dr. Winne's Opinion

Plaintiff argues ALJ Damille's conclusion that Dr. Winne's opinion was not persuasive is not supported by substantial evidence. (ECF No. 6 at 21–32.) The Commissioner responds, "Plaintiff has not shown any error in the ALJ's treatment of the medical opinion evidence that justifies remand." (ECF No. 8 at 7–11.)

For claims, such as Plaintiff's, filed after March 27, 2017, "the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources." *Daisy P. v. O'Malley*, Civ. A. No. 22-1391, 2024 WL 1173043, at *10 (D.N.J. Mar. 19, 2024). "[T]he Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Bruce T. v. Kijakazi*, Civ. A. No. 21-20289, 2022 WL 10025372, at *2 (D.N.J. Oct. 17, 2022) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).

According to the regulation, "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Daisy P.*, 2024 WL 1173043, at *10 (quoting 20 C.F.R. § 416.920c(a)). For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). For the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

The ALJ must "articulate his 'consideration of medical opinions and prior administrative medical findings' and articulate in the 'determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record.'" *Yury R. v. Dudek*, Civ. A. No. 22-5048, 2025 WL 684849, at *8 (D.N.J. Mar. 4, 2025) (quoting 20 C.F.R. § 404.1520c(b)). When determining the persuasiveness of a medical opinion, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Id.* (quoting *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023)).

Here, ALJ Damille considered Dr. Winne's medical opinions as follows:

> According to a letter by Dr. Winne, dated July 27, 2021 (Exhibit 13F): Dr. Winne opined the claimant should avoid reaching overhead or in any direction; avoid lifting or carrying more than five pounds bilaterally; and avoid fine, gross or repetitive motions with the hands or fingers. Dr. Winne has also opined that she is incapable of working due to her upper extremity and cervical limitations and pain which will also impact her attention, focus and concentration. These opinions are not persuasive. Regarding supportability, these opinions are not supported by Dr. Winne's own treatment notes. For example, the treatment records of Dr. Winne indicate that there was improvement with treatment; she has denied motor weakness; bicep/triceps strength was 5/5+ bilaterally; and grip strength was normal bilaterally (Exhibit 15F at 1-3). Regarding consistency, these opinions are not consistent with the overall record, which reflects that the claimant has severe physical impairments (*see, e.g.*, Exhibit 12F), and that that the claimant is limited to light work, subject to the additional limitations specified in the residual functional capacity finding above. The overall record shows functional activities of daily living (ADLs), full muscle strength in the upper extremities, and 4-5/5 grip strength (*see, e.g.*, Exhibits 11F at 5; 12F). Also, to the extent that Dr. Winne opines as to inability to work, the ultimate determination as to disability is reserved to the Commissioner.
>
> According to an orthopedic physical residual functional capacity questionnaire by Dr. Winne, dated June 28, 2022 (Exhibit 14F): The claimant can never do lifting and carrying less than 10 pounds; make no use of upper extremities for reaching, handling, fingering; and is

10

disabled at this time. This opinion is not persuasive. Regarding supportability, this questionnaire utilizes a check-box format, with little rationale provided. Also, these opinions are not supported by Dr. Winne's own treatment notes. For example, the treatment records of Dr. Winne indicate that there was improvement with treatment; she has denied motor weakness; bicep/triceps strength was 5/5+ bilaterally; and grip strength was normal bilaterally (Exhibit 15F at 1-3). Regarding consistency, these opinions are not consistent with the overall record, which reflects that the claimant has severe physical impairments (*see, e.g.*, Exhibit 12F), and that that the claimant is limited to light work, subject to the additional limitations specified in the residual functional capacity finding above. The overall record shows functional activities of daily living (ADLs), full muscle strength in the upper extremities, and 4-5/5 grip strength (*see, e.g.*, Exhibits 11F at 5; 12F). Also, to the extent that Dr. Winne opines as to inability to work, the ultimate determination as to disability is reserved to the Commissioner.

(Tr. at 41–42.)

### 1. Supportability

Plaintiff first challenges ALJ Damille's determination that Dr. Winne's treatment notes do not support his opinions. (ECF No. 6 at 24–27.) However, as the Commissioner points out (ECF No. 8 at 9), the ALJ specifically noted "the treatment records of Dr. Winne indicate that there was improvement with treatment; she has denied motor weakness; bicep/triceps strength was 5/5+ bilaterally; and grip strength was normal bilaterally." (Tr. at 41–42 (citing Tr. at 1179–81).) Plaintiff argues "[i]n so finding, the[] ALJ has selectively cited from the evidence of record," (ECF No. 6 at 24), but the Court disagrees. Before coming to his conclusion, ALJ Damille considered both evidence favoring and disfavoring Plaintiff, including many of same treatment notes Plaintiff contends support her claim. (*Compare* Tr. at 40, *with* ECF No. 6 at 25–26.) For example, the ALJ stated:

On January 17, 2021, Dr. Winne's notes indicated claimant reported Botox injections were very helpful. Despite such, she is still complaining of persistent myofascial pain of her neck and shoulders. She does continue with her pain medications and her diazepam and

11

> finds it very helpful (Exhibit 15F at 1). As of May 17, 2021, Dr. Winne's progress notes indicate that the claimant was still complaining of persistent neck pain. Trigger point injections were repeated. The pain was across her neck and into her shoulders. It also radiated down her hand. She stated it was typically at 4-6 out of 10 (Exhibit 15F at 114).

(Tr. at 40.) Moreover, ALJ Damille cited a May 17, 2021 progress note for his conclusion "[t]he overall record shows functional activities of daily living (ADLs), full muscle strength in the upper extremities, and 4-5/5 grip strength" (Tr. at 42 (citing Tr. at 968)), and that note also contains information Plaintiff argues supports Dr. Winne's opinion:

> [Plaintiff] does have decreased sensation to light touch in the fingers of the left hand, both the dorsal and palmer aspect. . . . She does have extension to about 50% today. She does have some occipital notch tenderness on the left. She continues to have tenderness to palpation in the paravertebral musculature of her cervical spine bilaterally. . . . Grip strength is equal and normal bilaterally. She does have tenderness to palpation over the right scalene.

(Tr. at 968). The Court is satisfied ALJ Damille sufficiently considered the breadth of Dr. Winne's treatment notes and finds substantial evidence supports ALJ Damille's finding that Dr. Winne's opinion is not supported by those notes. The Court cannot vacate the ALJ's decision merely because he did not recount every piece of evidence Plaintiff argues should have been included. Plaintiff may wish the ALJ cited additional portions of the treatment notes, but the Third Circuit "'do[es] not expect the ALJ to make reference to every relevant treatment note in a case.' . . . , and the cherry-picking of unmentioned details from a voluminous record does not [make] a viable claim." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 162 (3d Cir. 2016) (citation omitted) (quoting *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001)); *see also Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 88 (3d Cir. 2015) ("[A]n ALJ is not required to cite every piece of evidence in the record." (citing *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001)); *Thomas v. O'Malley*, Civ. A. No. 22-01774, 2024 WL 1333033, at *5 (M.D. Pa. Mar. 28, 2024) ("A written evaluation

12

of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." (quoting *Philips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004))); *Patrick F. v. Bisignano*, Civ. A. No. 24-4241, 2025 WL 2899899, at *6 (E.D. Pa. Oct. 10, 2025) ("The ALJ did not have to explicitly 'mention every piece of evidence in the record' to make his determination." (quoting *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009))).[2] Therefore, the Court finds no error in ALJ Damille's evaluation of Dr. Winne's treatment notes.

## 2. Consistency

Plaintiff next contends "Dr. Winne's opinion is consistent with the other opinions" in the record. (ECF No. 6 at 27–32.) In so arguing, Plaintiff focuses on Dr. Winne's treatment notes and the opinion of Dr. Alexander Hoffman, M.D.[3]

---

[2] In further support for the conclusion that ALJ Damille adequately considered Dr. Winne's opinion, ALJ Damille was under a specific obligation to do so based on a directive from the Appeals Council. The Appeals Council vacated ALJ Damille's November 2, 2021 decision and remanded the case in part because the "decision [did] not contain an adequate evaluation of opinion evidence from Richard Winne, Jr., M.D." and "the decisional rationale [did] not identify the specific findings that do not support Dr. Winne's limitations or other specific inconsistencies between Dr. Winne's opined limitations and the claimant's daily activities." (Tr. at 163.) In the vacated November 2, 2021 decision, ALJ Damille merely stated he considered Dr. Winne's opinion but found it "not fully persuasive as limits are in excess of what is supported by the medical evidence of record and not fully consistent with claimant's activity level. Moreover, it is on a decision reserved." (Tr. at 148–49.) The Court finds upon remand, ALJ Damille's consideration of Dr. Winne's opinion was much more thorough.

[3] Plaintiff also argues Dr. Winne's opinion is consistent with Plaintiff's own testimony regarding her daily activities. (ECF No. 6 at 30.) However, for the reasons discussed in more detail in Section IV.C. of this Opinion, the ALJ appropriately concluded Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 39.)

13

For the reasons explained above (*see supra* Section IV.A.1), the Court rejects Plaintiff's argument as to Dr. Winne's treatment notes. And for similar reasons, the Court is unpersuaded by Plaintiff's argument as to Dr. Hoffman. Dr. Hoffman opined Plaintiff "can lift and carry up to 10 pounds; sit for 4 hours in an 8 hour day; stand for 1 hour; walk for 2 hours; [and] never reach overhead but occasionally perform other manipulative activities." (Tr. at 41 (citing Tr. at 1168–73).) Dr. Hoffman further found there was "occasional operation of foot controls; occasional postural activities, except for never climbing; [and] environmental limitations." (*Id.* (citing Tr. at 1168–73).) However, ALJ Damille also noted specific portions of Dr. Hoffman's July 20, 2021 report that contradicted both Dr. Hoffman's and Dr. Winne's opinions. (*Id.* (citing Tr. at 1167).) In particular, Dr. Hoffman "found on physical examination that the [Plaintiff] was able to flex fully at the elbow and elevate at the shoulder almost fully as well." (*Id.* (citing Tr. at 1167).) Further, the ALJ noted Dr. Hoffman "utilize[d] a check-box format, with little supporting rationale," (*id.*), and as both Plaintiff and the Commissioner acknowledge, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); (ECF No. 6 at 25; ECF No. 8 at 9.) These contradictions, coupled with the "weak evidence" of the check-box format of the report, 994 F.2d at 1065, support ALJ Damille's conclusion that Dr. Hoffman's report was not persuasive, (Tr. at 41).

Indeed, evidence from the state agency physicians contradicted both Dr. Winne's and Dr. Hoffman's opinions. As the ALJ noted, the state agency physicians "opined that the claimant can occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday." (Tr. at 41.) Such findings are consistent with "light work" under the regulations, *see* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

14

weighing up to 10 pounds."),[4] and contradict Dr. Winne's opinion that Plaintiff should "avoid lifting or carrying more than five pounds bilaterally" and Dr. Hoffman's opinion that Plaintiff "can lift and carry up to 10 pounds" (Tr. at 41.)

Plaintiff argues the 2020 opinions from the state agency physicians are "outdated." (ECF No. 6 at 35.) The Court disagrees. "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). And the "Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Id.* Plaintiff further posits "[t]he ALJ failed to meaningfully consider the more recent evidence documenting a significant deterioration in [Plaintiff's] condition since the 2020 review by the State agency consultants" and "improperly rubber stamped the very outdated findings of the consultants." (ECF No. 11 at 13.) But the ALJ did not "rubber stamp" the state agency physicians' opinions. (*See* Tr. at 41.) In fact, the ALJ found those opinions to be "not persuasive," stating "[t]he evidence supports a finding of *greater* limitations." (Tr. at 41 (emphasis added).)

Accordingly, the Court finds ALJ Damille's determination that Dr. Winne's opinions were not consistent with the record as a whole was supported by substantial evidence.[5]

---

[4] 20 C.F.R. § 404.1567(b) further provides: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

[5] The documentation Plaintiff cites from Dr. George Naseef, M.D. and Dr. John Knightly, M.D. does not change this conclusion. (*See* ECF No. 6 at 30–32 (citing Tr. at 727–32, 956–62, 1262–66, 1331.) First, Plaintiff is incorrect to classify such documents as "opinions." (*Id.*) Under the regulations, a "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or

15

### B. ALJ Damille's RFC Finding

Plaintiff also challenges ALJ Damille's RFC determination, asserting "the record taken as a whole does not support the ALJ's finding that Ms. Beach can perform the exertional demands of light work." (ECF No. 6 at 33.) In making this argument, Plaintiff advances two theories: (1) "the

---

restrictions" in the ability to perform certain demands of work and adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). In addition to medical opinion evidence, "two additional categories of evidence from medical sources" exist. *Angela S. v. O'Malley*, Civ. A. No. 23-22441, 2024 WL 4563910, at *4 (D.N.J. Oct. 24, 2024). The first is "objective medical evidence, defined as 'signs, laboratory findings, or both.'" *Id.* (quoting 20 C.F.R. §§ 404.1502(f), 404.1513(a)(1)). The second is "[o]ther medical evidence," which is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [one's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). Here, the documentation Plaintiff cites includes medical records. (*See* Tr. at 727–32, 956–62, 1262–66, 1331.) Rather than satisfying the specific requirements of a "medical opinion," the records can more appropriately be classified as "other medical evidence." Therefore, ALJ Damille was required to consider this evidence but not under the evaluation framework for medical opinions. *See, e.g.*, *Miller v. Kijakazi*, Civ. A. No. 22-170-E, 2023 WL 6050097, at *1 n.1 (W.D. Pa. Oct. Sept. 15, 2023) ("This other [medical] evidence is to be considered, of course, but not evaluated in the same way as opinion evidence.").

Second, ALJ Damille did in fact cite to the exhibits in the administrative record that contain the records from Drs. Naseef and Knightly. (Tr. at 37, 39–40, 42.) "A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)). "Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Id.* (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Here, the ALJ's multiple references to the exhibits containing the documentation from Drs. Naseef and Knightly—Exhibits 4F and 15F—satisfy the Court that the ALJ considered the relevant documents, even if he did not cite the exact pages Plaintiff emphasizes. *See id.* at 780 (rejecting argument "the ALJ only considered a selective portion of the diagnostic evidence" in part because "the diagnostic tests which [the appellant] claims the ALJ did not consider are contained in Exhibit 14F of the record and the ALJ cited to Exhibit 14F numerous times in her decision"). Because the Court finds substantial evidence supports the ALJ's determination regarding the consistency of Dr. Winne's opinion, the Court declines to impermissibly reweigh the evidence. *See Wolfe v. Comm'r of Soc. Sec.*, Civ. A. No. 12–6083, 2013 WL 5328343, at *7 (D.N.J. Sept. 20, 2013) ("[T]his Court may not 'weigh the evidence or substitute its conclusions for those of the fact-finder.' Consequently, this Court may not set an ALJ's decision aside, 'even if [it] would have decided the factual inquiry differently.'" (citations omitted) (first quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992); and then quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.1999))).

16

opinions of Dr. Winne and Dr. Hoffman do not support the ALJ's light work finding" (*id.* at 34–35); and (2) the "ALJ erred in relying on the outdated opinions of the State agency consultants that Ms. Beach could perform the exertional demands of light work" (*id.* at 35–37). The Commissioner responds the ALJ "appropriately considered the relevant evidence, and his fact-finding with respect to the RFC assessment is supported by substantial evidence." (ECF No. 8 at 5.) As the Court has already concluded ALJ Damille appropriately considered and found unpersuasive the opinions of Drs. Winne and Hoffman, and the ALJ was entitled to consider the opinions of the state agency physicians (*see supra* Section IV.A.), the Court rejects Plaintiff's challenge. Nevertheless, the Court has reviewed the ALJ's RFC determination and concludes it is supported by substantial evidence.

At step four in the disability determination process, an ALJ must assess the claimant's RFC and compare it to her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The claimant bears the burden of proof on step four, *see Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000), including to present the facts necessary for the ALJ to assess the claimant's RFC, *Bowen*, 482 U.S. at 146 n.5 ("The claimant . . . must bear the burden . . . of showing . . . *at step four that the impairment prevents him from performing his past work.*" (emphasis added)). On appeal, a claimant must show (1) an error occurred; and (2) but for that error, she might have proven her disability. *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). If a claimant believes an error was made, she "must clearly identify the error and explain how the error actually 'affect[ed] [his or her] "substantial rights."'" *Id.* at 814 n.3 (first alternation in original) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Although an ALJ is required to "consider all evidence before him" and "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence,"

17

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000), the ALJ's reasoning may be implicit in the decision. *See Smith v. Astrue*, 961 F. Supp. 2d 620, 652 (D. Del. 2013) ("Plaintiff is correct that the ALJ failed to explicitly assess the credibility of Mrs. Smith's testimony or assign her testimony a particular amount of weight. However, a fair reading of the ALJ's decision suggests that the ALJ did implicitly make these judgments."); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("We conclude . . . the ALJ's discussion of the evidence in the record that implicitly supported Dr. Rohar's criticism provided a reasonable basis for the ALJ not to include a limitation in the RFC about Wise's inability to adapt to normal work pressures or changes."). Indeed, the Third Circuit has held the Social Security Act "requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered" in their decision-making process, and does not mandate use of "magic words" from the statute or regulations. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). It is sufficient for the RFC determination to be supported by "substantial evidence" in the entire record, and it is unnecessary for the ALJ to engage in an explicit "function-by-function" analysis where the reasoning is implicit in the record. *Glass v. Comm'r of Soc. Sec.*, Civ. A. No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019); *Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) ("Although the ALJ did not make a task by task analysis, the overall review carefully considered Chiaradio's past relevant work and the ALJ assessed what Chiaradio could reasonably do."); *Donna R. v. Kijakazi*, Civ. A. No. 20-15449, 2022 WL 13009149, at *12 (D.N.J. Oct. 21, 2022) (finding substantial evidence for step four determination where "the ALJ's discussion at step two demonstrates that he implicitly discounted that examiner's opinions when assessing Plaintiff's limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace").

18

ALJ Damille's step four analysis is supported by substantial evidence. The ALJ first summarized the relevant evidence of Plaintiff's abilities and impairments, including Plaintiff's function report; a third-party function report; Plaintiff's testimony at both the June 1, 2021 hearing and the March 19, 2024 hearing; the medical evidence such as treatment notes; and the medical opinions of Dr. Winne, Dr. Hoffman, and the DDS medical consultants. (Tr. at 38–42.) ALJ Damille provided a detailed and reasoned discussion of such evidence, weighing evidence tending to support and negate a finding of disability. (*See id.*) The ALJ highlighted aspects of the evidence that led to his RFC conclusion, such as Plaintiff's ability to "flex fully at the elbow and elevate at the shoulder almost fully" upon physical examination, "functional activities of daily living (ADLs), full muscle strength in the upper extremities, and 4-5/5 grip strength." (*Id.* at 41–42.) ALJ Damille then connected this evidence to the limits in his RFC determination. (*Id.* at 42 ("Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment.").)

ALJ Damille therefore showed he considered all the evidence in the record and gave a basis for his decision, which is all the substantial evidence standard requires. *See Burnett*, 220 F.3d at 121; *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). The Court, therefore, finds no basis to disturb the ALJ's RFC determination. As the Commissioner points out, "it is not the role of this Court to decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner." (ECF No. 8 at 15); *see Wolfe v. Comm'r of Soc. Sec.*, Civ. A. No. 12–6083, 2013 WL 5328343, at *7 (D.N.J. Sept. 20, 2013) ("[T]his Court may not set an ALJ's decision aside, 'even if [it] would have decided the factual inquiry differently.'" (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.1999))); *Gillespie v. Kijakazi*, Civ. A. No. 21-20342, 2022 WL 4010857, at *11 (D.N.J. Sept. 2, 2022) ("[T]he fact that there is some 'evidence in the record that

supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision.'" (quoting *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 955 (3d Cir. 2006))).[6]

### C. Plaintiff's Subjective Complaints

Plaintiff next argues the "ALJ failed to properly evaluate [her] testimony," which Plaintiff contends warrants remand. (ECF No. 6 at 40.) The Commissioner responds the ALJ's "subjective complaint analysis conforms to the regulations, enjoys substantial evidentiary support, and permits meaningful judicial review." (ECF No. 8 at 11.)

The Regulations require an ALJ to give significant consideration to a claimant's subjective testimony of the inability to perform even light or sedentary work, but only when that testimony is supported by competent medical evidence. An ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record. 20 CFR § 404.1529(a); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Therefore, an ALJ will consider a claimant's statements about the intensity, persistence, and limiting effects of symptoms, but will evaluate those statements "in relation to the objective medical evidence and other evidence," in reaching a conclusion as to whether a claimant is disabled. 20 CFR § 404.1529(c)(4).

Here, ALJ Damille summarized Plaintiff's testimony from two separate hearings. (Tr. at 38–39.) After carefully considering the evidence, the ALJ concluded Plaintiff's "medically determinable impairment could reasonably be expected to cause symptoms; however, the

---

[6] Plaintiff contends the ALJ's failure to consider her July 21, 2021 CT scan is a reversable error. (ECF No. 6 at 37–38.) The Court disagrees. As explained above, "[a] written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)). And the Court is satisfied the ALJ considered the exhibit (Exhibit 15F) that contains the CT scan results, even if the exact pages containing those results was not cited. (*See supra* note 4.)

[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 39.) The ALJ relied on aspects of the record that contradicted Plaintiff's subjective testimony, including specific findings in the medical records of normal grip and muscle strength, improvement of Plaintiff's condition with treatment, the opinions of the state agency physicians, and functional activities of daily living. (Tr. at 39–42.) The Court finds ALJ Damille's explanation for not crediting aspects of Plaintiff's subjective testimony was sufficient, especially given the deference this Court must give the ALJ's credibility determinations. *See Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal." (quoting *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002))).

In sum, ALJ Damille considered Plaintiff's testimony, chronicled her medical and treatment history, assessed her impairments, and outlined the medical and non-medical evidence he relied on for determining Plaintiff's RFC. ALJ Damille considered Plaintiff's subjective complaints and identified inconsistencies with the evidence of record. *See* 20 CFR § 404.1529(a). In reviewing these findings, there is substantial evidence supporting ALJ Damille's evaluation of the intensity and persistence of Plaintiff's symptoms. Therefore, ALJ Damille properly provided an explanation with support in the record for discounting Plaintiff's testimony regarding her condition. Accordingly, ALJ Damille did not err in evaluating Plaintiff's testimony.

### D.  Evidence from Plaintiff's Husband

Finally, Plaintiff argues the ALJ's findings with respect to the third-party function report from Plaintiff's husband were not supported by substantial evidence. (ECF No. 6 at 41–45.) The Commissioner responds the ALJ had "no obligation to address" the statements from Plaintiff's

21

husband, and the ALJ "went above and beyond his obligations by providing actual reasons for why the husband's statements were not entirely compelling." (ECF No. 8 at 14–15.) The Court agrees with the Commissioner and finds Plaintiff's argument to be an invitation to improperly substitute a different factual determination for that of the ALJ. Plaintiff claims "an ALJ must consider lay testimony concerning a claimant's ability to work" (ECF No. 6 at 44), but ALJ Damille did consider the lay evidence from Plaintiff's husband (Tr. at 42.) Although Plaintiff argues the ALJ "implicitly claimed that the lay evidence was biased 'due to the personal connection with [Plaintiff]'" (ECF No. 6 at 44 (quoting Tr. at 42)), the ALJ "[n]evertheless" decided to consider such evidence because "it is based on personal observation of the [Plaintiff]" (Tr. at 42). Accordingly, the Court finds no error in the ALJ's consideration of the third-party function report from Plaintiff's husband.

## V.   CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Damille erred in determining Plaintiff was not entitled to DIB benefits under the Act. Therefore, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: April 9, 2026